# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

IN RE:

APPLICATION OF SANG CHEOL WOO FOR AN
ORDER TO TAKE DISCOVERY PURSUANT TO 28
U.S.C. § 1782

          Applicant.

Case No. _____

---

**MEMORANDUM OF LAW IN SUPPORT OF SANG CHEOL WOO'S APPLICATION
FOR AN ORDER UNDER 28 U.S.C. § 1782 TO TAKE DISCOVERY FROM THE
PRESIDENT AND FELLOWS OF HARVARD COLLEGE AND CLAIRE SPACKMAN**

KOBRE & KIM LLP
1919 M Street NW
Washington, DC 20036
tel. +1 202 664 1900
fax. +1 202 664 1920

*Attorneys for Applicant
Sang Cheol Woo*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................1

FACTUAL BACKGROUND ...................................................................................6

    I.     Spackman and his Business Partners are Criminally Investigated for
         Allegedly Defrauding Investors in Littauer Technologies Co. Ltd. ......................6

    II.    Mr. Woo Sues Spackman in Korea and Obtains the Judgment .............................9

    III.   Mr. Woo Brings an Action in Hong Kong to Recognize and Enforce the
         Korean Judgment ...................................................................................10

    IV.   The Respondents' Relationship to the Hong Kong Action..................................10

         A.     Knowledge and Records in the Possession of Harvard................................10

         B.     Knowledge and Records in the Possession of Claire Spackman ...................11

ARGUMENT.......................................................................................................12

    I.     The Application Satisfies the Three Statutory Requirements of
         28 U.S.C. § 1782 ..................................................................................12

    II.    The Court Should Grant the 1782 Application under the Four
         Discretionary Factors in *Intel*..................................................................15

         A.     Harvard and Ms. Spackman Are Not Participants in the Hong
              Kong Action........................................................................................15

         B.     The Foreign Court Would Be Receptive to the Requested
               Discovery, and the Character of the Foreign Proceedings Favors
               Granting the Application.......................................................................16

         C.     The Section 1782 Application Does Not Circumvent Any Hong
               Kong Proof-Gathering Restrictions .........................................................18

          D.     The Discovery Requests Are Narrowly Tailored and Are Not
               "Unduly Intrusive or Burdensome" .........................................................18

CONCLUSION ...................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
    673 F.3d 76 (2d Cir. 2012).................................................................. 13, 14, 15

*Chevron Corp. v. Shefftz,*
    754 F. Supp. 2d 254 (D. Mass. 2010) ............................................................ 18

*Choi v. Kim,*
    50 F.3d 244 (3d Cir. 1995).................................................................................. 17

*Esses v. Hanania,*
    101 F.3d 873 (2d Cir. 1996)................................................................ 15, 17, 18

*Euromepa S.A. v. R. Esmerian, Inc.,*
    51 F.3d 1095 (2d Cir. 1995)........................................................................... 16

*First American Corp. v. Price Waterhouse LLP,*
    154 F.3d 16 (2d Cir. 1998) ............................................................................. 19

*In re Application of Hill,*
    2005 WL 1330769 (S.D.N.Y. June 3, 2005) ................................................. 17

*In re Application of Hill,*
    2007 WL 1226141 (S.D.N.Y. Apr. 23, 2007)................................................ 18

*In re Application of Sveaas,*
    249 F.R.D. 96 (S.D.N.Y. 2008) ..................................................................... 14

*In re Bayer AG,*
    146 F.3d 188 (3d Cir. 1998) ........................................................................... 16

*In re Hanwha Azdel, Inc.,*
    979 F. Supp. 2d 178 (D. Mass. 2013) .............................................................. 1

*In re Honeywell Int'l, Inc. Sec. Litig.,*
    230 F.R.D. 293 (S.D.N.Y. 2003) ................................................................... 14

*In re O'Keeffe,*
    2015 WL 1308546 (D. Nev. Mar. 24, 2015) ................................................ 17

*In re O'Keeffe,*
    646 F. App'x 263 (3d Cir. 2016) ................................................................... 17

*In re Request for Subpoena by Ryanair Ltd.*,
   2014 WL 5088204 (N.D. Cal. Oct. 9, 2014)..............................................................14

*In re Schlich*,
   2016 WL 7209565 (D. Mass. Dec. 9, 2016)....................................................15, 18

*In re Veiga*,
   746 F. Supp. 2d 8 (D.D.C. 2010) .......................................................................14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)...............................................................................*passim*

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus*,
   62 F. Supp. 3d 358 (S.D.N.Y. 2014)..................................................................14

*Mak v. For Issuance of Discovery in Aid of Foreign Proceeding*
*Pursuant to 28 U.S.C. 1782*,
   2012 WL 2906761 (N.D. Cal. July 16, 2012).......................................................17

*Marubeni America Corp. v. LBA Y.K.*,
   335 F. App'x 95 (2d Cir. 2009) ........................................................................15

*Metallgesellschaft AG v. Hodapp*,
   121 F.3d 77 (2d Cir. 1997)...............................................................................15

*Minatec Fin. S.A.R.L. v. SI Group Inc.*,
   2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ......................................................18

*Samyang Food Co. Ltd. v. Pneumatic Scale Corp.*,
   2005 WL 2711526 (N.D. Ohio Oct. 21, 2005) .....................................................17

## Statutes and Treaties

28 U.S.C. § 1782................................................................................*passim*

Sang Cheol Woo ("Mr. Woo") respectfully brings this *ex parte* petition[1] for an order pursuant to 28 U.S.C. § 1782 to take discovery, in the form of the attached subpoenas,[2] from the President and Fellows of Harvard College ("Harvard") and Claire Spackman (also known by her Korean name "Yoon Kee Choi") ("Ms. Spackman") (together, the "Respondents"), who are both found in the District of Massachusetts, for use in proceedings currently pending before the High Court of Hong Kong (the "Hong Kong Action").

## PRELIMINARY STATEMENT

The case underlying this discovery application concerns a massive scandal in South Korea in 2000 involving the collapse of a company called Littauer Technologies Co. Ltd. ("Littauer"), which was founded, majority-owned, and controlled by a Hong Kong technology tycoon named Charles C. Spackman (also known by his Korean name "Yoo Shin Choi") ("Spackman"). In the aftermath of Littauer's collapse, Spackman "fled to Hong Kong."[3] One of Spackman's two business partners in Littauer was detained and charged with criminal offenses by Korean criminal and regulatory authorities.[4] Another business partner was convicted less than one year later of embezzlement,

---

[1] Section 1782 applications are brought and decided *ex parte* in the first instance. *See In re Hanwha Azdel, Inc.,* 979 F. Supp. 2d 178, 179 (D. Mass. 2013) ("The procedure now adopted by this court is common: following allowance of the *ex parte* order, intervention is permitted, and a ruling on a motion to quash on the merits follows.") (citation omitted).

[2] *See* Declaration of Beau D. Barnes ("Barnes Decl.") (attached hereto as Exhibit A), Exhibit ("Ex.") 1 (proposed Harvard subpoena) and Ex. 2 (proposed Claire Spackman subpoena).

[3] *See* Barnes Decl., Ex. 3 (Opinion of the Seoul High Court (29th Civil Department) dated September 29, 2011, and certified English translation) ("High Court Op.") at 19 ("Defendant Yoo Shin Choi fled to Hong Kong[.]"). All references to "High Court Op." herein refer to the certified English translation of the High Court Opinion.

[4] *See id.*

related to a separate but similar transaction, and sentenced to three years imprisonment.[5] Spackman was ultimately criminally fined for violating Korean securities laws, based on a charge lodged by the Korean Public Prosecutor's Office.[6] A source from the Korean Public Prosecutors' Office described Spackman and his business partners as "offenders of serious crimes" and said that the Public Prosecutors' Office viewed Spackman as the "principal" offender and his business partner as an "accomplice to the crime."[7]

Mr. Woo filed a follow-on civil suit to these criminal investigations against Spackman and his business partners (as did other investors who also suffered huge losses as a result of the Littauer's implosion). The suit, filed in the Korean courts, alleged that Spackman committed fraud by causing Littauer to enter into a massive self-dealing transaction with a notional value of ~US $1.3 billion. Spackman made a personal profit of over ~US $100 million while the minority investors in the company, including Mr. Woo, suffered enormous losses.[8] In 2011, the Seoul High

---

[5] *See id.* at 6.

[6] *See id.* at 20-21.

[7] *See* Barnes Decl., Ex. 4 (*Littauer Technologies Siphons Off $19.6 Billion: Punishment to Begin for Alleged 'Crimes' from Loophole in System*, *SE Daily* (March 25, 2011) and certified English translation):

> "A source from the Public Prosecutors' Office said that 'Littauer Technologies representatives have committed economics crimes that are not helpful to the nation at all and are offenders of serious crimes.' ... It is anticipated that once the whereabouts of Chairman Choi [Spackman] are established, the accusation relating to the manipulation of market price which the Financial Supervisory Service requested the Public Prosecutors' Office for an investigation will also be revealed. The Public Prosecutors' Office is determined to find out the whereabouts of Chairman Choi [Spackman]. ... The Public Prosecutors' Office is of the view that if Hur, the former CEO [of Littauer], is an accomplice to the crime, Chairman Choi [Spackman] is the principal."

[8] *See* High Court Op. at 21-23.

Court entered judgment in favor of Mr. Woo against Spackman. The judgment was later affirmed by the Supreme Court of Korea. The current value of the judgment with interest is ~US $12 million.

In June 2016, Mr. Woo brought an action to enforce the judgment in Hong Kong, where Spackman lives. This Section 1782 application seeks discovery about Spackman's assets for use in that pending action. Mr. Woo has already litigated for many years in Korea (and now in Hong Kong) to recover his losses resulting from Spackman's misconduct. He has invested tremendous amounts of time and money (as well as his reputation) to pursue the litigation. To this day, Spackman has not paid one penny on the ~US $12 million judgment entered in 2011.

In the aftermath of the criminal investigation involving the Littauer matter, Spackman continues to be an extremely successful and wealthy businessman based in Hong Kong. He currently controls a virtual empire of companies bearing the "Spackman" brand.[9] The companies include two public companies listed on the Toronto and Singapore Stock Exchanges worth a combined market valuation of ~US $60 million; an investment company with ~US $1.5 billion under management; and a major entertainment company that has produced worldwide blockbuster films such as *Snowpiercer*—starring Academy Award winners Tilda Swinton and Octavia Spencer—and *The Man*

---

[9] Spackman founded and serves as Chairman and/or CEO of many of the following companies bearing his name: **Hong Kong**: Spackman Group Limited; Spackman Entertainment Group (HK) Limited; Spackman Media Group Limited; Spackman Equities Limited; Spackman Investment Corporation Limited; Spackman Capital Group Limited. **Bermuda**: Spackman Group Limited. **Canada**: Spackman Equities Group Inc. **Singapore**: Spackman Entertainment Group Limited; Spackman Entertainment Group Pte. Limited. **Korea**: Spackman Entertainment Korea Inc.; Spackman Media Korea; Spackman Associates Company Limited. Spackman's name is also widely known in Korea. An earlier article by Fortune magazine titled *The Art of the e-Deal* (a play on the title of U.S. President Donald Trump's book *The Art of the Deal*) described Spackman as a "cultural hero" in Korea who has been depicted in a movie as "a daring entrepreneur who restlessly roams Asia making deals." *See* Barnes Decl., Ex. 5 (Fortune magazine article).

*from Nowhere*, one of the highest grossing films in Korean history.[10] These business ventures have made Spackman an immensely wealthy man. He lives in an estate located in what *Forbes* magazine described as the "wealthiest neighborhood on earth," which is home to "[Hong Kong's] richest residents, with an aggregate net worth of ~US $123 billion." [11]

Despite his tycoon-like success, Spackman has gone to great lengths to avoid payment to his creditors. The companies bearing his name and his assets are held through a maze-like network of offshore nominees and trusts (many of which are managed by close family members and classmates from Harvard).[12] The estate where he and his family live in Hong Kong is owned through a series of shell companies—a Hong Kong company in turn owned by a British Virgin Islands company. The ultimate owner is afforded anonymity by the strict regulations of the British Virgin Islands. He created the Spackman Family Trust (for which he serves as the president[13]) to pay for his and his family's first-class lifestyle.

---

[10] *See* Barnes Decl., Ex. 6 (*Bloomberg* quote for Spackman Equities Group); Ex. 7 (*Bloomberg* quote for Spackman Entertainment Group); Ex. 8 (Spackman Group website stating that it and its affiliates "manage of portfolio of over US $1.5 billion"); and Ex. 9 ("Past Releases" page of the Spackman Entertainment Group website).

[11] *See* Barnes Decl., Ex. 10 (Forbes article). Although his exact net worth is not known, there are clues that it may be immense. His former neighbor is Li Ka-shing—the second-richest man in Asia and, until recently, the richest man in Asia—who *Forbes* magazine reported is currently worth ~US $31 billion. *See* Barnes Decl., Ex. 11 (Forbes Li Ka-shing net worth profile). That neighboring estate was later leased for ~US $75,000 per month. *See* Barnes Decl., Ex. 12 (EJInsight.com article).

[12] Spackman founded Littauer Investments with two of his former classmates from Harvard. In addition, two former Harvard classmates serve as directors of Spackman Equities Group Inc. and Spackman Media Group Limited; managing directors for Spackman Group Limited; and CEO of Spackman Capital Group Limited, among other titles. *See* Barnes Decl., Ex. 13 (*Bloomberg* Executive Profile of Martin A. Mohabeer) and Ex. 14 (*Bloomberg* Executive Profile of Richard Lee).

[13] *See* Barnes Decl., Ex. 15 (*Bloomberg* Executive Profile of Charles C. Spackman).

Thus, it is not surprising that very limited information is available about who ultimately owns the assets that support Spackman's lavish lifestyle in Hong Kong. The Respondents in this action for third-party discovery are two of the only currently known, independent sources of information about Spackman's assets in Hong Kong and elsewhere. Spackman has made significant donations to Harvard through the Harvard Alumni Association and The Charles C. Spackman Scholarship Fund over time. Harvard has information about funds used to pay these donations (some after the judgment was entered in 2011), The Charles C. Spackman Scholarship Fund, and potential information about the Spackman Family Trust. Ms. Spackman, as a close family member, has unique knowledge about Spackman's assets and accounts and nominee or other structures used to hold his estate and his other assets. The Respondents may have information about transfers made to third parties near the time of the Korean judgment which put assets beyond the reach of creditors. There is no other currently known independent source for this information.

For the reasons set forth below, the Court should grant this Section 1782 application and allow Mr. Woo to take discovery from the Respondents. *First*, the application meets the statutory requirements for a Section 1782 application because the Respondents are both "found" in the District of Massachusetts and the discovery sought is "for use" in foreign proceedings in which Mr. Woo is an "interested person." *Second*, the discretionary factors that this Court must consider to determine whether to grant the application under the United States Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), all favor granting the application. District Courts routinely order Section 1782 discovery from U.S. residents for use in legal proceedings in Hong Kong and in foreign judgment enforcement proceedings around the world. Accordingly, Mr. Woo respectfully requests that the Court grant his application to take discovery from Harvard and Ms. Spackman.

## FACTUAL BACKGROUND

**I.  SPACKMAN AND HIS BUSINESS PARTNERS ARE CRIMINALLY INVESTIGATED FOR ALLEGEDLY DEFRAUDING INVESTORS IN LITTAUER TECHNOLOGIES CO. LTD.**

In 2000, Mr. Woo became a minority shareholder in a company founded and controlled by Spackman called Littauer Technologies Co. Ltd. ("Littauer").[14]  Littauer was traded on the Korean Securities Dealers Automated Quotations exchange ("KOSDAQ").  Less than one year after Mr. Woo became a stakeholder in Littauer, Littauer would be "practically dissolved" and its shares would become virtually worthless.[15]  When Mr. Woo acquired shares in Littauer, he was required to enter into a lock-in agreement agreeing not to sell the shares for one-year.  As the stock later plummeted as a result of Spackman's actions, Mr. Woo and other minority Littauer investors were unable to minimize their losses and lost virtually all of their investment.[16]

Soon after Mr. Woo invested in Littauer, its shares traded at an all-time high. Capitalizing on the moment, Spackman caused Littauer to enter into a merger transaction with a Bermuda company called Silverline Investments Ltd. ("Silverline").  In truth, both Littauer and Silverline had been "established under careful discussions and conspiracy of" Spackman and his

---

[14] It is believed that Spackman named Littauer after the Littauer Center, which houses Harvard's Department of Economics, where Spackman studied.

[15] *See* High Court Op. at 23 ("Littauer Tech was incorporated in January 2000 and was practically dissolved around December 2000 and its lifespan endured for less than 1 year[.]").

[16] *See id.* at 22 ("other shareholders … could not even minimize their losses … due to the agreement … which prohibits the disposal of shares by establishing a safeguarding deposit period of 1 year if they purchase stocks") and 24 ("the capital increase with consideration in this case was legal in outward appearance but its essence was an expedient financial scheme akin to a fraudulent payment for shares, which induced a temporary increase of share prices, but became a main trigger for plummeting of share prices").

two business partners Gap Soo Seo and Rok Heo.[17]  Spackman was a director of Littauer and

CEO of Silverline, while Rok Heo was CEO of Littauer and a director of Silverline.  Gap Soo

Seo was a director of both Littauer and Silverline.[18]

Spackman caused Littauer to acquire Silverline in exchange for ~US $1.3 billion in

newly issued Littauer stock.  The new share issuance caused a massive dilution in the value of

Littauer's shares.  According to the complaint later filed by Mr. Woo, it was later revealed that

most of the companies owned by Silverline had no sales, employees, or offices and were only

paper companies.  Others were in businesses that were nearly inoperational.  The true economic

value of Silverline, which was purchased for a notional ~US $1.3 *billion*, was only ~US $2.1

*million*.[19]

The economic effect of the transaction was that value was transferred from Littauer's

shareholders to Silverline's shareholders:  Spackman, Seo, and Heo.[20]  After the transaction was

completed, they sold their shares in Littauer immediately (notably in violation of a six-month

lock-up agreement).  Spackman brazenly liquidated ~11.5% of the <u>total</u> outstanding shares in

Littauer in *just three days* collecting a breathtaking windfall profit of more than ~US $100

million.[21]  His business partners earned ~US $44 million in profits.[22]  These rapid sales created a

---

[17] *See id. at* 23.

[18] *See id.* at 13.

[19] *See* Barnes Decl., Ex. 16 (Appellate Brief filed by Sang Cheol Woo in the Seoul High Court and English translation) at 5043, 5049-5051 (original pagination).

[20] *See* High Court Op. at 24 ("the capital increase [in] essence was an expedient financial scheme akin to fraudulent payment for shares").

[21] Spackman sold 1,436,379 shares in Littauer between August 11 and 14, 2000.  *See id.* at 21-22.

massive depression in the market price for Littauer's shares, which exacerbated the effect of the original share dilution created by the issuance of US $1.3 billion in new Littauer stock.[23]

After the true nature of the transaction was made public, Littauer recorded a loss of approximately US $1.2 billion (approximately 60 percent of its market value at the time). The share price eventually dropped to 0.8% of its maximum traded value before Littauer was delisted from KOSDAQ.[24]

In the aftermath of the transaction, the Korean Financial Supervisory Service and Public Prosecutor's Offices both opened investigations into Spackman, Seo, and Heo. The Korean press published an article titled "Authorities Begin to Investigate the Process of Littauer's Cash Flow." Heo was arrested and charged with violating the Korea Securities Exchange Act. He was later convicted, although his conviction was subsequently overturned on appeal. Spackman "fled to Hong Kong" before he could be questioned. In his absence, the Korean Public Prosecutor's Office was not able to gather evidence from him and ultimately concluded the case with a criminal fine against him for violating Korean securities regulations.[25] Seo was later convicted of embezzlement related to a separate but similar transaction involving stock manipulation. He was sentenced to three years' imprisonment and five years' probation.[26]

---

[22] *See id.*

[23] *See id.* at 19.

[24] *See id* at 21 ("Defendant Littauer Tech performed accounting of and took as business loss approximately KRW 1.4 trillion [~US $1.2 billion.]").

[25] *See id.* at 19-20.

[26] *See id.* at 6.

## II.    MR. WOO SUES SPACKMAN IN KOREA AND OBTAINS THE JUDGMENT

In 2003, Mr. Woo sued Spackman and nine other defendants in the Seoul Central District Court (25th Division) in South Korea (the "Seoul District Court") for his losses resulting from Littauer's complete destruction.   Spackman was personally served with process but failed to appear in the proceedings.[27]   The Seoul District Court initially denied Mr. Woo's claims. However, in 2011, the Seoul High Court (29th Civil Department) (the "Seoul High Court") reversed the decision of the Seoul District Court and entered judgment against Spackman (and the other defendants jointly and severally) for an amount equivalent to ~US \$4.5 million.[28]   The court concluded that defendants had, as a group, engaged in "an expedient financial scheme akin to a fraudulent payment."[29]   The Court held that Spackman in particular was "deemed to have made admissions" to the allegations made in the complaint because he had failed to appear even though he had been personally served with process.[30]   Spackman later filed an appeal to the Supreme Court of Korea, which affirmed the judgment against him in 2013 (although it reversed the judgment against the other defendants).[31]   The judgment against Spackman is subject to no further avenues of appeal and is now completely perfected, final, and enforceable.   The current value of the judgment with interest is equivalent to ~US \$12 million.

---

[27] *See* Barnes Decl., Ex. 17 (Affirmation of Service by Yeung Kin-chor).

[28] *See* High Court Op. at 2 ("Defendants shall jointly pay to Plaintiff KRW 5,207,884,800 …").

[29] *See id.* at 24.

[30] *See id.* at 8.

[31] *See* Barnes Decl., Ex. 18 (Judgment of the Supreme Court of Korea dated October 31, 2013, and certified English translation).

## III.   MR. WOO BRINGS AN ACTION IN HONG KONG TO RECOGNIZE AND ENFORCE THE KOREAN JUDGMENT

In June 2016, Mr. Woo brought an action to domesticate and enforce the Korean judgment in Hong Kong, where Spackman lives in his estate, where a number of Spackman umbrella companies are registered, and where he is believed to have other assets.  The Hong Kong Action requests the High Court of Hong Kong to declare that the Korean judgment is a valid and enforceable debt under Hong Kong law and to enforce the judgment against Spackman's assets.[32]  The pleadings stage of the action closed on January 30, 2017.  The case is currently in discovery after which it will proceed to summary adjudication or trial.[33]

## IV.   THE RESPONDENTS' RELATIONSHIP TO THE HONG KONG ACTION

The Respondents to this Section 1782 application are believed to have information and records material to issues in the Hong Kong Action.

### A.   Knowledge and Records in the Possession of Harvard

Spackman has made sizable donations to Harvard and the Harvard Alumni Association throughout the past.[34]  Spackman also funds The Charles C. Spackman Scholarship Fund—a

---

[32] The action is titled *Sang Cheol Woo v. Charles C. Spackman* [HCA 1586 / 2016].  *See* Barnes Decl., Ex. 19 (Declaration of Randall Arthur ("Arthur Decl.")) ¶ 6.  A copy of the Writ of Summons and Statement of Claim filed in the action are attached to the Arthur Decl. at Ex. 1.

[33] *See id.* at ¶¶ 7-10.

[34] He is the Co-Chair of Reunion Gifts for his graduating class at Harvard, which shows that he has made significant personal donations to Harvard.  *See* Barnes Decl., Ex. 20 (Spackman Group website stating that Spackman is the "Co-Chair of Reunion Gifts" for his graduating class at Harvard).  The Harvard Alumni Association also awarded him the Roger Flather '54 Award for "encouraging younger generations of alumni to initiate annual giving traditions of their own," which also strongly suggests that he has made large donations to the Harvard Alumni Association.  *See* Barnes Decl., Ex. 21 (Harvard College Fund Awards website).

scholarship fund that pays tuition annually for students from Asia to attend Harvard.[35] Due to these transactions, there is a strong basis to believe that Harvard is in possession of donation and other records that contain wire transfer data with account and routing numbers; CHIPS, Fedwire, SWIFT, and other inter-bank messages; and other information about the financial institutions and accounts that Spackman uses. The size of The Charles C. Spackman Scholarship Fund and Spackman's past donations to the Harvard Alumni Association are material to his wherewithal to pay the Judgment debt. Harvard's records may also show payments from the Spackman Family Trust (or other third parties), made on behalf of Spackman, relevant to identifying any third parties that hold assets or pay income streams that would also be subject to execution on the judgment in the Hong Kong Action.

### B. Knowledge and Records in the Possession of Claire Spackman

Ms. Spackman is the judgment debtor's adult daughter. Evidence suggests that Spackman continues to regularly transfer money to Massachusetts to pay for Ms. Spackman's expenses, including tuition at Harvard, rent, and other living costs.[36] Ms. Spackman comes from an extremely well-heeled family and she has no public source of income other than Spackman or the Spackman Family Trust. We further have a basis to believe that she has important knowledge, or information that will lead to evidence, about the ownership of the estate that Spackman lives in in Hong Kong; valuable debenture rights owned by Spackman in the Hong Kong International School, which Ms.

---

[35] *See* Barnes Decl., Ex. 20 (Spackman Group website stating that Spackman is the "sponsor of The Charles C. Spackman Scholarship Fund").

[36] Ms. Spackman also attends Harvard College.

Spackman attended for twelve years, and social clubs such as the American Club of Hong Kong[37]; Spackman's beneficial ownership of the Spackman companies; and his other assets. As a member of Spackman's small four-person family, Ms. Spackman is also likely a beneficiary of and in possession of information about the Spackman Family Trust which Spackman is the president of.[38] Her bank, credit card, tuition, and housing records will contain wire transfer data, account and routing numbers, inter-bank messages, and other information pertinent to Spackman's financial institutions and accounts. Finally, Ms. Spackman will be a critical source of independent information about any changes made to Spackman's financial holdings leading up to the Judgment entered in 2011; the decision of the Supreme Court of Korea in 2013; or the start of the Hong Kong Action in 2016. Ms. Spackman can provide independent, third-party records and testimony about these topics.

## ARGUMENT

The Court should grant this application for discovery because it (i) meets the statutory prerequisites for relief under 28 U.S.C. § 1782, and (ii) the factors to be weighed by the Court in exercising its discretion under the statute heavily favor granting the application.

## I. THE APPLICATION SATISFIES THE THREE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782

Section 1782, entitled "Assistance to foreign and international tribunals and to litigants before such tribunals," authorizes federal district courts to order discovery to assist applicants,

---

[37] Debentures rights are non-interest-bearing bonds purchased and traded on public markets that are often linked to admission at the most elite schools in Hong Kong. School and club debentures in Hong Kong can exceed US $1 million. *See* Barnes Decl., Ex. 22 (article published in the *Economist* magazine dated June 14, 2007).

[38] Information Ms. Spackman can provide is relevant to whether the Spackman Family Trust (or any other special purpose vehicles used by Spackman) holds assets or pays income streams that can be enforced against in Hong Kong either on a direct or on an *alter ego* basis.

such as Mr. Woo, in obtaining evidence in the United States for use in foreign legal proceedings. "[T]he statute has, over the years, been given increasingly broad applicability." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (citations and quotations omitted).

To obtain discovery under Section 1782, an applicant must satisfy three statutory requirements: (i) the person from whom discovery is sought must reside or be found within the district; (ii) the discovery must be for use in a proceeding before a foreign or international tribunal; and (iii) the application must be made by an interested person in the foreign proceeding. 28 U.S.C. § 1782(a). The application can be made for use in a current, ongoing proceeding in a foreign or international tribunal *or* a proceeding that is "within reasonable contemplation." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 243 (2004) ("[T]he 'proceeding' for which discovery is sought under § 1782(a) must be in reasonable contemplation, but need not be 'pending' or 'imminent.'").

This application seeking discovery from Harvard and Ms. Spackman should be granted because it meets each of these three requirements:

*First,* the parties from whom discovery is sought, Harvard and Ms. Spackman, are present within the District of Massachusetts. Harvard is an independent non-profit corporation located at Harvard University, Massachusetts Hall, Cambridge, MA 02138. Ms. Spackman currently resides at Dunster House, 945 Massachusetts Avenue, Harvard University, Cambridge, MA 02138.

*Second*, the documents and deposition testimony requested are "for use" in the Hong Kong Action. The "for use" requirement imposes a *de minimis* burden on the applicant to show that the requested discovery has some relevance to the foreign proceeding. *See In re*

*Application of Sveaas*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (the standard for relevance is "broadly permissive"); *In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010) ("the burden imposed upon an applicant is *de minimis*").  Relevance is "broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter [sic] that could bear on, any issue that is or may be in the case."  *In re Application of Sveaas*, 249 F.R.D. at 106-07 (internal quotations omitted).  "Where relevance is in doubt, the district court should be permissive."  *Id.* at 107 (citing *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 301 (S.D.N.Y. 2003)).  District courts should not attempt to determine whether the evidence would actually, or even probably, be discoverable or admissible in the foreign proceeding. *See Brandi-Dohrn*, 673 F.3d at 82 (noting unanimity among the Circuits that have ruled on the issue).

Here, the requested discovery is pertinent to critical issues in the Hong Kong Action including:  (1) Spackman's wherewithal to pay the Judgment, (2) his current accounts and assets subject to the jurisdiction of the Hong Kong courts to satisfy the judgment, (3) assets held by the Spackman Family Trust, and (4) any transfers of assets designed to protect the assets from creditors, among other issues.

*Third,* as the complainant in the Hong Kong Action, "there can be no real dispute" that Mr. Woo qualifies as an "interested person" under Section 1782.  *In re Request for Subpoena by Ryanair Ltd.*, 2014 WL 5088204, at *1 (N.D. Cal. Oct. 9, 2014) ("[T]here can be no real dispute" that a judgment creditor in a foreign judgment enforcement proceeding is an "interested [party]" to that proceeding.); *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 361 (S.D.N.Y. 2014) (granting Section 1782 application brought by judgment creditor seeking discovery for use in a U.K. judgment enforcement proceeding); *see also*

*Esses v. Hanania*, 101 F.3d 873, 875 (2d Cir. 1996) (per curiam) (a party to the underlying foreign proceedings "is an 'interested person' within the meaning of the statute"); *Metallgesellschaft AG v. Hodapp*, 121 F.3d 77, 79 (2d Cir. 1997) (as a party to the foreign proceeding, the applicant qualifies as an interested person).

Thus, this application meets each of the statutory requirements for relief under Section 1782.

## II. THE COURT SHOULD GRANT THE 1782 APPLICATION UNDER THE FOUR DISCRETIONARY FACTORS IN *INTEL*

Once the statutory requirements are met, as they are here, courts consider four discretionary factors as articulated by the Supreme Court in *Intel*: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies"; and (iv) whether the discovery sought is unduly intrusive or burdensome. 542 U.S. at 264-65. In considering these factors, courts exercise their discretion liberally in favor of granting discovery. *See Brandi-Dohrn*, 673 F.3d at 80. No one factor "should be dispositive in a district court's analysis." *Marubeni America Corp. v. LBA Y.K.*, 335 F. App'x 95, 97 (2d Cir. 2009). In this case, all four factors favor granting discovery.

### A. Harvard and Ms. Spackman Are Not Participants in the Hong Kong Action

The first discretionary factor favors the applicant where the respondent is not a party in the foreign proceeding. *See In re Schlich*, 2016 WL 7209565, at *4 (D. Mass. Dec. 9, 2016); *Intel*, 542 U.S. at 264. The Hong Kong Action is a civil proceeding brought by Mr. Woo against Spackman only. Neither Harvard nor Ms. Spackman is a party (or otherwise a participant) to the

Hong Kong Action.  This factor, therefore, clearly weighs in favor of granting the requested relief.

**B.      The Foreign Court Would Be Receptive to the Requested Discovery, and the Character of the Foreign Proceedings Favors Granting the Application**

In examining the second *Intel* factor, "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of section 1782." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (emphasis added); *see also In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998) ("[T]he burden of demonstrating offense to the foreign jurisdiction . . . should rest with the party opposing the application.").  Authoritative proof is limited to proof "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures[.]" *Euromepa*, 51 F.3d at 1100.

There is no such evidence here.  To the contrary, evidence collected in Section 1782 proceedings is admissible in Hong Kong proceedings.[39]  Hong Kong courts routinely ask United States courts for judicial assistance under Section 1782.  *See, e.g., The Attorney General v. Chan Wai-Lim, alias Bill Chan and Others* [1987] HKCFI 157 (granting application to issue letter of request to the U.S. Department of Justice ("DOJ") to obtain a Section 1782 order to take discovery from an individual in the Northern District of California)[40], *affirmed in* [1987] HKCA 279.[41]  United States courts also regularly grant Section 1782 applications seeking discovery for

---

[39] *See also* Arthur Decl. ¶ 11 ("Subject to the rules of discovery and evidence in Hong Kong, evidence obtained pursuant to Section 1782 before a United States District Court may be admitted and relied upon in proceedings commenced in the High Court of Hong Kong.").

[40] *See* Arthur Decl., Ex. 2.

[41] *See id.*, Ex. 3.

16

use in Hong Kong courts.  *See, e.g.*, *In re O'Keeffe*, 2015 WL 1308546, at *1 (D. Nev. Mar. 24, 2015) (granting Section 1782 application for discovery for use "in a lawsuit adjudicated in Hong Kong, People's Republic of China, to which [the applicant] is a party"); *Mak v. For Issuance of Discovery in Aid of Foreign Proceeding Pursuant to 28 U.S.C. 1782*, 2012 WL 2906761, at *1 (N.D. Cal. July 16, 2012) (granting Section 1782 application to take a deposition "to be used in Hong Kong divorce proceedings"); *Esses*, 101 F.3d at 874 (affirming the district court's grant of discovery under Section 1782 for information in support of applicant's "effort to be appointed administrator of his brother's estate in Hong Kong"); *In re Application of Hill*, 2005 WL 1330769, at *5 n.4 (S.D.N.Y. June 3, 2005) (granting application for Section 1782 discovery in aid of liquidation proceedings in Hong Kong and Bermuda).  Finally, Hong Kong is a signatory to the Hague Convention on Taking of Evidence Abroad in Civil or Commercial Matters.  This strongly indicates that "the Hong Kong court is likely 'receptive to American judicial assistance.'"  *In re O'Keeffe*, 646 F. App'x 263, 267 (3d Cir. 2016).  Therefore, this factor also clearly weighs in favor of granting the application.[42]

---

[42] Judgments issued by the courts of South Korea are also afforded a high level of comity and deference by U.S. courts.  *See Choi v. Kim*, 50 F.3d 244, 248 (3d Cir. 1995) (finding Korean judgment to be equivalent of sister state judgment, rather than a foreign judgment, based on the *Treaty of Friendship, Commerce and Navigation Between the United States of America and The Republic of Korea*); *Samyang Food Co. Ltd. v. Pneumatic Scale Corp.*, 2005 WL 2711526, at *6 (N.D. Ohio Oct. 21, 2005) ("The Korean judicial system provides substantially the same substantive and procedural due process protections as those afforded by Ohio.  In Korea, parties receive notice, the right to legal counsel, the right to present evidence and witnesses and to examine evidence offered against them, and a right to appeal to a higher court.").

### C. The Section 1782 Application Does Not Circumvent Any Hong Kong Proof-Gathering Restrictions

Under the third *Intel* factor, the Court examines whether the Section 1782 application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Courts typically weigh the third *Intel* factor against the applicant only where they find that an application is brought in bad faith. *See In re Schlich*, 2016 WL 7209565, at *6 ("The primary inquiry is whether the discovery is being requested in bad faith.") (citing *Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254, 262 (D. Mass. 2010)); *see also In re Application of Hill*, 2007 WL 1226141, at *3 (S.D.N.Y. Apr. 23, 2007) ("Absent any indication of bad faith on [the applicant's] part, the Court is simply unwilling to weigh the request for § 1782 assistance itself as a negative discretionary factor.") (internal quotations omitted).

There can be no ambiguity that this application is brought in good faith. Mr. Woo has already litigated for over 13 years in Korea (and now in Hong Kong) to recover his losses caused by Spackman's misconduct more than 16 years ago. He has invested tremendous amounts of time and money (as well as his reputation) to pursue the litigation. This demonstrates unequivocally that Mr. Woo is seeking the requested discovery in good faith to vindicate his rights in Hong Kong under the final judgment entered by the Seoul High Court. Therefore, this factor also weighs in favor of granting the application.

### D. The Discovery Requests Are Narrowly Tailored and Are Not "Unduly Intrusive or Burdensome"

The fourth *Intel* factor favors the applicant as long as the requests for discovery are not overly burdensome or duplicative. *See Esses,* 101 F.3d at 876 (affirming discovery where there was no "indication that the district court's order is overly burdensome or duplicative"); *Minatec Fin. S.A.R.L. v. SI Group Inc.*, 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008) (no undue

burden where the document request was "specifically and narrowly tailored"). Where, as here, a petitioner's requests concern "the precise subject matter of the underlying litigation," the requests are not unduly burdensome. *See First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 23 (2d Cir. 1998).

The discovery requests are narrowly tailored to the Hong Kong Action. The requested discovery specifically targets a discrete set of records and testimony relating to Spackman's accounts and assets and the Spackman Family Trust. The proposed subpoenas seek production of documents in response to only two document requests. Many of the records requested should be electronically accessible, including donation records, credit card, bank account, and tax statements. Thus, the relevant documents and testimony should be simple and inexpensive to search for, access, and produce. This factor also weighs in favor of granting the application.

## <u>CONCLUSION</u>

Based on the foregoing, Mr. Woo respectfully moves the Court to issue an Order:

1. Granting the application for discovery under Section 1782;

2. Granting issuance of the subpoenas as they appear attached as Exhibits 1 and 2 to the Barnes Declaration;

3. Directing the President and Fellows of Harvard College to provide deposition testimony and produce the documents in its possession, custody, and control, as requested in the subpoena attached as Exhibit 1, by no later than March 10, 2017, at 12:00 p.m.

4.   Directing Claire Spackman to provide deposition testimony and produce the documents in her possession, custody, and control, as requested in the subpoena attached as Exhibit 2, by no later than March 10, 2017, at 12:00 p.m.

Dated:          February 10, 2017

Respectfully submitted,

KOBRE & KIM LLP

By:      /s/ Beau D. Barnes

Beau D. Barnes
John Han
(*pro hac vice* application forthcoming)
1919 M Street NW
Washington, DC 200036
Tel:  +1 202 664 1900
Fax: +1 202 664 1920
beau.barnes@kobrekim.com
john.han@kobrekim.com

*Attorneys for Applicant Sang Cheol Woo*